**FILED**
**DEC 05 2011**
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Brandi L. Harper, Esq., CA Bar No. 264672
Tristan G. Pelayes, Esq., CA Bar No. 206696
WAGNER & PELAYES, LLP
1325 Spruce Street, Suite 200
Riverside, CA 92507
Telephone: (951) 686-4800
Fax:        (951) 686-4801

Attorney for Christopher Nagy

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVSION

In re:

    Michael A. Morales
    *fdba* Force Powerboats, Inc.
    *fdba* Force Power Boats,

    Debtor.

CHRISTOPHER NAGY,

    Plaintiff,

vs.

MICHAEL MORALES; FORCE POWER BOATS, and DOES 1 through 10, inclusive,

    Defendants.

) CHAPTER 7
)
) CASE NO.: 6:11-bk-37050-MJ
) Adv. Pro. No.:
)
) **COMPLAINT OF CHRISTOPHER NAGY TO DETERMINE DEBT NON-DISCHARGEABLE [11 U.S.C. § § 523(A)(4) and 523(A)(6)**
)
) **(Action in Non-bankruptcy Forum Re: Nagy v. Michael Morales; Force Power Boats; Riverside Superior Court Case NO. RIC 10003883)**

/ / /

---

BLH:et

**COMPLAINT OF CHRISTOPHER NAGY TO DETERMINE DEBT NON-DISCHAREABLE [11 U.S.C § § 523 (A)(4) AND (A)(6)]**

1

Plaintiff, Christopher Nagy ("NAGY"), alleges as follows:

## NATURE OF ACTION

1. This is an action by NAGY against Debtor, Michael Morales, to determine a debt arising out of a verdict rendered in a California State judgment against debtor for, conversion non-dischargeable.

## PARTIES

2. Nagy is, and at all times herein mentioned was, an individual living in the state of California.

3. Nagy is informed and believes and based thereon alleges that debtor is, and at all times herein mentioned was, an individual over the age of eighteen (18) residing in the county of Riverside , State of California.

4. Nagy is informed and believes that Force Power Boats is a company of unknown origin owned by Debtor Michael Morales who was doing business in the County of Riverside; State of California.

5. The debtor is the Debtor in this Chapter 7 proceeding. NAGY is a creditor of the Debtor.

## JURISDICTION/VENUE

6. This Court has jurisdiction over the subject matter of this Adversary proceeding based on 28 U.S.C. §§ 157(a), 157(b) and this is a core proceeding out of 28 U.S.C. § 157(b).

7. Venue is appropriate pursuant to 28 U.S.C. § 1409.

8. This complaint initiates an adversary proceeding within the meeting of the Federal Rule of Bankruptcy Procedure 7001, whereby Nagy seeks a determination that the Debtor's debt to Nagy is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6).

## FACTUAL BACKGROUND

9. On or about May 27, 2009, Christopher Nagy and Michael Morales, through his corporation, Force Power Boats, entered into a contract

2

1  in the County of Riverside wherein defendants would build a custom made
2  vessel (hereinafter referred to as "Kingpin") which plaintiff would purchase.
3  The contract contained the agreed upon price of $83,500. On May 27, 2009,
4  plaintiff paid $13,500.00 as a down payment for the boat.

5      10. On May 29, 2009, plaintiff paid $25,069.05 to defendant for a
6  new drive that would be installed in the boat. This drive was not listed on the
7  bill of sale and was an additional part which was to be purchased through
8  Arneson Industries. On June 1, 2009, defendant Morales called plaintiff and
9  asked for more money in order to proceed with the installation of the drive and
10  requested extra money for the down payment. On June 4, 2009, plaintiff
11  wired $41,000 from his checking account to defendant. On June 6, 2009,
12  plaintiff headed down to California expecting his boat to be completed and to
13  take delivery of his boat in about one week.

14      11. On June 7, 2009, he called defendant Morales to insure that the
15  Arneson drive was there. He was informed that it was not. He then called the
16  owner of Arneson Industries who told him that they had not received the
17  money from defendant Morales, therefore the drive had not been provided.
18  When plaintiff questioned defendant about the missing money for the drive he
19  stated he was unsure of what had happened and would make sure that the
20  payment got out so that he would receive the drive.

21      12. On June 15, 2009, plaintiff received a call from the owner of
22  Arneson Industries stating that the check sent by defendant Morales did not
23  clear and that he would be going to pick up the parts that were sent.

24      13. Defendant Morales had promised that on June 15, 2009, the boat
25  would be ready. The boat was not completed on that date. On June 25, 2009,
26  plaintiff received another call from defendant Morales stating that after a
27  discussion with the engine builder, they believed that plaintiff should put new
28  heads on the engine. Plaintiff also received a phone call directly from the

3

engine builder telling him why he should get the new heads on the engine to the boat. Plaintiff was promised that even with this addition, the boat would be ready to be on the water by July 1, 2009 and that he would be home in Chicago by July 4, 2009. Plaintiff paid an additional $4,816.25 for the new engine heads and the installation.

14. On July 1, 2009, the boat was not completed. On that date, defendant Morales told him that there would be thousands of dollars of more expenses because the exhaust was no longer operational. He stated that the boat would be ready soon but that that the loan documents would need to be signed before it could be water tested. Defendant Morales set up an appointment for July 2, 2009 for the loan documents to be signed.

15. On July 2, 2009, the parties signed the loan documents.

16. On July 8, 2009, defendant Morales expressed that he needed additional money for additional parts to put on the boat, and that the initial estimates were wrong. On that date, plaintiff paid an additional $8,283.93.

17. On July 9, 2009, defendant Morales stated that the boat would be taken to water for a test run. Plaintiff drove to Lake Elsinore and was then told by defendant Morales that things went wrong and that the boat would not be hitting the water that day.

18. On July 10, 2009, defendant Morales told plaintiff that he needed to pay for insurance on the boat and other costs. Plaintiff paid an additional $4,696.00 for insurance.

19. On July 15, 2009, plaintiff received a call from defendant Morales who told him the boat was ready. Defendant Morales stated that the boat would be on the water July 16, 2009.

20. On July 16, 2007, at the request of defendant Morales, plaintiff picked up the boat along with defendant Morales and took it to the lake for a test run. Plaintiff transported the boat because defendant Morales' truck was

**COMPLAINT OF CHRISTOPHER NAGY TO DETERMINE DEBT NON-DISCHAREABLE [11 U.S.C § § 523 (A)(4) AND (A)(6)]**

broken down and that was the only way to get the boat into the water. Defendant Morales and the boat tuner took it on to the water. The propeller of the boat did not work, and thus, the tuner was unable to tune the boat. However, plaintiff was forced to pay for the tuner. Defendant Morales instructed the plaintiff to keep the boat at the hotel at Lake Elsinore because they would be taking it back out on the water the next day and defendant has no way to transporting the boat.

21. On July 17, the boat went back out on the water with a new propeller and it worked. Plaintiff went with defendant Morales when they took the boat out. They were out on the water approximately twenty minutes. They scheduled the tuner for the following day.

22. On July 18, 1009, defendant Morales and the tuner took the boat back out on the water. The Plaintiff received a phone call from defendant Morales that the engine had been seriously damaged. Plaintiff again paid $400.00 to the tuner.

23. On July 19, 2009, defendant Morales stated that his engine builder was on vacation and that it would be weeks before he could figure out what was wrong with the boat. Plaintiff needed to handle issue at home, so he left his truck in California and flew home to Chicago.

24. On July 24, 2009, defendant Morales stated that it would be a month until the engine would be repaired and the boat would be ready.

25. On August 24, 2009, defendant Morales called plaintiff to tell him no more work would be done on the boat, as he was out of money. He stated that if plaintiff would give him more money, he would take it off the loan by eliminating future payments.

26. On August 26, 2009, plaintiff paid defendant Morales $4,000.00 so that he could finish the boat.

27. On September 23, 2009, defendant Morales told him the engine

was ready, but he could not afford to pay the tuner to tune the engine. He stated that if plaintiff did not pay for the tuning, the engine would sit there and would not go into the boat.

28. On October 1, 2009, plaintiff paid the tuner directly $1,421.00 for tuning the engine. Defendant Morales stated the boat would be in the water by October 5, 2009.

29. On October 2, 2009, plaintiff flew back to California.

30. On October 5, 2009, defendant Morales called plaintiff to tell him that the boat would not be going in the water and that were more problems.

31. On October 13, 2009, defendant Morales called plaintiff and ask him to forward the following month's payment because he did not have the money to get the boat in the water.

32. On October 15, 2009, wired defendant Morales an additional $1,000.00.

33. On October 19, 2009, plaintiff flew back home because the boat was still not ready.

34. On October 29, 2009, plaintiff received a phone call from defendant Morales stating that the boat went into the water and the engine blew again. There were serious problems that would cause months of delays.

35. On October 31, 2009 plaintiff flew back to California to pick up his truck that he had left for the purpose of hauling the boat back. Defendant Morales stated he did not have any money to fix the boat and that the only way to have the boat fixed was for plaintiff to pay for everything.

36. Plaintiff has fully preformed all conditions, covenants and promises to be performed on the part of plaintiff per the contract. Defendant has breached the contract by failing to deliver the boat to plaintiff completed. As a proximate result of the breach of contract by defendant, plaintiff has been damaged in an amount to be proven at time of trial.

BLH:et

**COMPLAINT OF CHRISTOPHER NAGY TO DETERMINE DEBT NON-DISCHAREABLE [11 U.S.C § § 523 (A)(4) AND (A)(6)]**

**FIRST CLAIM FOR RELIEF (TO DETERMINE DEBT NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(4)**

37. Nagy repeats and realleges each and every allegations contained in paragraphs 1 through 36 above as if fully set forth herein.

38. As set forth more fully above, the Debtor wrongfully, fraudulently, willfully and maliciously misappropriated the property and money of Nag with the intent to convert that property for his own use without Nagy's consent.

39. The claims brought by Nagy and against the Debtor constitute a debt for larceny that is non-dischargeable under 11 U.S.C. § 523(a)(4).

**SECOND CLAIM FOR RELIEF (TO DETERMINE DEBT NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(6)**

40. Nagy realleges each and every allegation contained in paragraphs 1 through 39 above, as if fully set forth herein.

41. The Debtor wrongfully, fraudulently, willfully and maliciously misappropriated the property and money of Nagy with the intent to convert the property for his own use without Nagy's consent. The Debtor was aware that the misappropriation would injure express and was without just cause or excuse.

42. The claims brought by Nagy and against Debtor constitute a debt for willful and malicious injury that is non-dischargeable under 11 U.S.C. § 523(a)(6).

**REQUEST FOR JUDGMENT**

Based on the foregoing, Nagy requests judgment be entered against the Debtor as follows:

A. That the Court determine that the sums claimed by Nagy and against the Debtor constitute a debt (the "Debt") that is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4);

B. That the Court determine that the Debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

C. For judgment against the Debtor in an amount according to proof;

D. For pre-judgment interest on the Debt at the maximum legal rate;

E. For post-judgment interest on the Debt at the maximum legal rate until the Debt is paid;

F. For attorneys' fees and costs, if permissible, according to proof; And

G. For such other and further relief as the Court deems just, equitable and appropriate under the circumstances.

_____
BRANDI L. HARPER, Esq.
TRISTAN G. PELAYES, Esq.
Attorneys for CHRISTOPHER NAGY

8

**COMPLAINT OF CHRISTOPHER NAGY TO DETERMINE DEBT NON-DISCHAREABLE [11 U.S.C § § 523 (A)(4) AND (A)(6)]**

FORM B104 (08/07)                                                                                         2007 USBC, Central District of California

|  |  |
|---|---|
| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Page 2) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |

| PLAINTIFFS<br>Christopher Nagy | DEFENDANTS<br>Michael Morales; Force Power Boats |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Brandi L. Harper, Esq. / Wagner & Pelayes, LLP<br>1325 Spruce Street, Ste. 200<br>Riverside, CA 92507 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
This suit arises out of a contract between the parties in which defendant failed to perform and defendant's conversion of plaintiff's money and property. The complaint is brought in this court pursuant to 11 U.S.C. sections 523(a)(4) and 523(a)(6).

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |



FORM B104 (08/07), page 2                                                                 2007 USBC, Central District of California

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** | | |
|---|---|---|
| **NAME OF DEBTOR** Michael A. Morales fdba Force Powerboats, Inc. fdba Force Power Boats | | **BANKRUPTCY CASE NO.** 6:11-bk-37050-M |
| **DISTRICT IN WHICH CASE IS PENDING** Central | **DIVISIONAL OFFICE** Riverside | **NAME OF JUDGE** Judge Meredith A. Jury |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** [signature] | | |
| **DATE** 12/5/11 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)** Brandi L. Harper | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.